UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RICHARD CONRAD,<br><br>        Plaintiff,<br><br>    v.<br><br>ACE PROPERTY & CASUALTY INSURANCE COMPANY and RAIN & HAIL, LLC,<br><br>        Defendants. | No. CV-05-5117-FVS<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross motions for summary judgment. The Court heard oral argument on these motions on June 2, 2006. Plaintiff was represented by Nicholas Gellert. Defendants were represented by Sean Boutz.

I. **BACKGROUND**[1]

Plaintiff Richard Conrad owns and operates a fruit orchard in Franklin County, Washington. Plaintiff purchased from Defendant Ace Property and Casualty Insurance Company ("Ace") an Adjusted Gross Revenue Pilot Insurance Policy ("Policy"). Defendant Rain & Hail, LLC ("Rain and Hail"), acted as Ace's agent in administration of the Policy. The Policy was issued pursuant to a Federal Crop Insurance Corporation ("FCIC") pilot program, under the auspices of 7 U.S.C. §

---

[1] The parties agree there are no disputed issues of material fact and that this case is appropriate for resolution on summary judgment.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT - 1

1501 *et seq.*  The FCIC did not issue Plaintiff's Policy; rather the Policy was reinsured by FCIC.  In this regard, the Policy states:

> This insurance policy is reinsured by Federal Crop Insurance Corporation (FCIC) under the provisions of the Federal Crop Insurance Act (7 U.S.C. 1501 et seq.) (Act).  All provisions of the policy and rights and responsibilities of the parties are specifically subject to the Act.  The provisions of the policy may not be waived or varied in any way by the crop insurance agent or any other agent or employee of FCIC or the company.  In the event we cannot pay your loss, your claim will be settled in accordance with the provisions of this policy and paid by FCIC.  No state guarantee fund will be liable for your loss.

Policy, at 1.  The Policy contains the following definition of "Policy":

> The agreement between you and us consisting of the accepted application, these provisions, Special Provisions, actuarial documents, and the applicable regulations published in 7 C.F.R. chapter IV.

Policy, at 3.

The key to coverage under this Policy is what is referred to as the Approved Adjusted Gross Revenue ("Approved AGR").  From the Approved AGR, the amount of coverage, and, in turn, the annual premiums are determined.  *See* Policy, Section 6.  The Approved AGR is also the base from which the amount of indemnity owed to the insured is determined in the event of a loss.  *See* Policy, Section 11.

Plaintiff suffered a loss against his expected orchard revenue for the 2004 crop year due to harsh weather conditions and submitted a claim for $1,021,598.  Plaintiff's claim was calculated by using an Approved AGR of $2,341,360.  Conversely, Defendants calculated Plaintiff's 2004 crop loss at $516,686, using an Approved AGR of $1,640,092.  Plaintiff seeks additional indemnity in the amount of

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT - 2

$486,008 and prejudgment interest. This figure is the difference between Plaintiff's calculated loss of $1,021,598, and Defendants' calculated loss of $516,686, less the additional premium payment of $18,904 that Plaintiff would be required to pay if additional coverage is extended. Defendants request the Court enter judgment in their favor, concluding that the indemnity payment to Plaintiff in the amount of $516,686 satisfied Defendants' obligations under the terms of the Policy.

**II. DISCUSSION**

    *A.  Jurisdiction*

Plaintiff filed this action for damages in Franklin County superior court. Defendants timely removed the action to federal court. 28 U.S.C. § 1441. The Court has original jurisdiction over this action based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a) because Ace is a Pennsylvania corporation, Rain and Hail is an Iowa corporation, and Plaintiff is a citizen of Washington state. Since federal jurisdiction in this case is based on diversity of citizenship, the Court must apply the substantive law of the state of Washington. *Erickson v. Desert Palace, Inc.*, 942 F.2d 694, 695 (9th Cir 1991) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

    *B.  Rules of Construction for Contract Interpretation*

Interpretation of an insurance contract is a question of law. *Quandrant Corp. v. American States Ins. Co.*, 154 Wash.2d 164, 171, 110 P.3d 733, 737 (2005). Insurance contracts are construed as contracts. *Id.* An insurance contract should be considered as a

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT - 3

1  "whole" and given a "fair, reasonable, and sensible construction as
2  would be given to the contract by the average person purchasing
3  insurance." *Id.* (citation and internal quotation marks omitted).  If
4  the policy language is clear and unambiguous, [the Court] must
5  enforce it as written; [the Court] may not modify it or create
6  ambiguity where none exists." *Id.*  A clause is ambiguous only "when
7  on its face, it is fairly susceptible to two different
8  interpretations, both of which are reasonable." *Id.*  If a clause is
9  ambiguous, the Court may rely on extrinsic evidence of the intent of
10 the parties to resolve the ambiguity.  *Id.*  "Any ambiguity remaining
11 after examination of the applicable extrinsic evidence is resolved
12 against the insurer and in favor of the insured." *Id.*  The
13 "expectations of the insured may not override the plain language of
14 the contract." *Id.*

### C.   *The Policy*

The Policy defines "Approved AGR" as:

> The simple average of the AGR income history you included on your farm report, adjusted to reflect any expected increase or reduction in allowable income for the insurance year (see section 5).

Policy at 2.  The referenced Section 5 of the Policy contains multiple subparts, but subpart (e) is the only relevant subpart dealing with adjusting the AGR to reflect increases and decreases in an insured's income.  It states, in relevant part:

> (e) Your average AGR income history will be adjusted to reflect any reduction in potential revenue for the insurance year caused by changing the agricultural commodities produced from your farming operation, the size of your farming operation, your share, market conditions or damage to any crop occurring prior to the

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT - 4

        beginning of the insurance period, or any other factor that could result in less allowable income for the insurance year than the simple average of your AGR income history.
   (1)  We will make this reduction based on the information contained in your farm report, our inspection of any damaged crop, and our estimate of the effect of these changes or conditions.
   (2)  ...
   (3)  If you can prove that your allowable income for the insurance year will be higher than the average of your AGR income history, we **may** establish your approved AGR at a greater amount than the average.
   (4)  If we establish your approved AGR at a greater amount than the average of your AGR income history, the indexed average expenses will be calculated as follows:

Policy at 6 (emphasis added).

    The above quoted provisions in the Policy contain detailed descriptions of how expenses will be calculated if the approved AGR is higher or lower than the five year average. However, it is silent with respect to how the income side of the equation is set to arrive at an approved AGR that is higher or lower than the five-year average. With respect to a reduced income, the Policy says that Defendants may make an "estimate". *See* Policy, Section 5(e)(1). With respect to increased income from expanding operations, the Policy simply says that Defendants "may" set the Approved AGR above the five-year average when expected income is higher than the average. *See* Policy, Section 5(e)(3).

    Here, Plaintiff's five-year average income history from 1998 through 2002 was $1,620,644. However, Plaintiff claims his expected income for the 2004 crop year was going to be much higher than this average because in the last few years he had replaced damaged and

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT - 5

out-of-date trees.  Thus, Plaintiff contends his Approved AGR must be adjusted upward from the average of his five-year income history to his expected income for 2004, or $2,341,360.  Plaintiff argues the Policy requires that the Approved AGR be established to reflect *any* increases or decreases from the five year average because the Policy defines Approved AGR as the "average of the AGR income history ... adjusted to reflect *any* expected increase[.]"  Policy, at 2 (emphasis added).  Plaintiff acknowledges that Section 5(e) of the Policy indicates only that the Approved AGR "may" be set higher than the average.  However, Plaintiff contends "may" must be interpreted to mean "shall" or the promise to adjust in the definition of "Policy" would become illusory.  Finally, Plaintiff contends that the Policy is ambiguous with respect to how the Approved AGR is to be set in circumstances of increased expected income.  Thus, Plaintiff argues the Policy has to be given the interpretation that favors the broadest coverage.

On the other hand, Defendants contend Plaintiff's Approved AGR must be calculated pursuant to the procedures set forth in the Adjusted Gross Revenue Standards Handbook ("Handbook") published by the FCIC.  Defendants contend the Policy is not ambiguous with respect to how the Approved AGR should be calculated in circumstances of increased expected income because the terms in the Policy establish the use of the Handbook's indexed average.

### D.   *The Handbook*

Defendants contend the Handbook's definition of Approved AGR and the indexing procedure set forth in the Handbook has been

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT - 6

incorporated by reference into the Policy.  First, Defendants note that the Policy only states that Defendants *may* determine Plaintiff's Approved AGR should be set higher than his previous five-year average.  Second, Defendants point to the section of the Policy that states:  "All provisions of the policy and rights and responsibilities of the parties are specifically subject to the Act.  The provisions of the contract may not be waived or varied in any way by the crop insurance agent or any other agent or employee of FCIC or the company."  Third, Defendants point to a section in the Policy dealing with the insurer's duties in the event of damage or loss.  This section states, in relevant part,

> We recognize and apply the claim adjustment and other procedures established or approved by FCIC.

Policy, at 8.  For these reasons, Defendants argue the Policy requires use of the FCIC procedures, which are set forth in the Handbook.

The Handbook defines Approved AGR as:

> The simple average of the AGR income history included on the insured's Farm Report adjusted to reflect any expected increase (Indexed income) or reduction (total expected income) or reduction in allowable income for the insurance year [See Part 2, Section 19, Par. B].

The referenced "Part 2" of the Handbook is entitled "Underwriting", *see* Handbook, at 26, and the referenced Section 19 is entitled "Calculation of AGR".  *See* Handbook, at 44.  Using the indexing procedures in Section 19 of the Handbook, Defendants calculated Plaintiff's 2004 Approved AGR at $1,640,092.  This was an

upward adjustment of $19,448 from Plaintiff's five-year average.[2]

The Court agrees with Plaintiff in that the term "may" in Section 5(e) of the Policy can only mean "shall" or the contract becomes illusory. Here Plaintiff proved that his expected income for the 2004 crop year was going to be higher than the average of his AGR income history. Consistent with the directive in Section 5(e), Defendants established Plaintiff's Approved AGR at a greater amount than the average: $19,448 higher than his average. However, Plaintiff disputes Defendants use of the Handbook and wants to use his full expected income for his Approved AGR. To accept Plaintiff's contention, the Court would need to conclude that the Policy is ambiguous with respect to how the Approved AGR is to be set in circumstances of increased expected income.

However, the Court cannot conclude the language in the Policy is ambiguous. Although Section 10 of the Policy does not specifically identify which claim adjustment procedures may be applied, Section 10 does state that the insurer will recognize and apply those claim adjustment procedures "established or approved by FCIC." Here, Plaintiff does not dispute that the Handbook was established and approved by the FCIC. Although Plaintiff argues Section 10 is only applicable to loss claims, and not the determination of an insured's Approved AGR, Plaintiff acknowledges that the Approved AGR is crucial in determining each and every loss claim. Thus, when the Court reads

---

[2] Plaintiff's revenue from his orchard for the years 1998 through 2002 ranged from $1,474,377 to $1,836,600 for a five-year average of $1,620,644.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT - 8

the Policy as a "whole", Section 10 is certainly applicable to determining the Approved AGR when calculating a claim for loss or damage. Although the Policy may not provide for the result Plaintiff expected, the "expectations of the insured may not override the plain language of the [Policy]." *Quandrant Corp.*, 154 Wash.2d at 171, 110 P.3d at 737. The Court concludes Defendants' use of the Handbook is provided for by the terms of the Policy. Therefore, the Court determines Defendants' indemnity payment to Plaintiff in the amount of $516,686 satisfied Defendants' obligations under the terms of the Policy. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment (**Ct. Rec. 10**) is **DENIED** and Defendants' Cross-Motion for Summary Judgment (**Ct. Rec. 16**) is **GRANTED.**

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this Order, furnish copies to counsel, **ENTER JUDGMENT FOR DEFENDANTS** and **CLOSE THE FILE.**

**DATED** this 5th day of June, 2006.

                              *s/ Fred Van Sickle*
                               Fred Van Sickle
                      United States District Judge